UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION


ANTONIO AUBREY,

        Plaintiff,

v.                                                    Case No. 2:12-cv-168
                                                      HON. ROBERT HOLMES BELL
TINA WOLAK, et al.,

        Defendants.

_____/


## REPORT AND RECOMMENDATION

Plaintiff Antonio Aubrey, an inmate currently confined at the Baraga Correctional

Facility (AMF), filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983.   Plaintiff claims

that defendants psychologists Tina Wolak and Ann Lanala violated his rights by causing a delay in

his mental health treatment.   Plaintiff alleges that on April 4, 5, 9, 20 and 21, 2011, he sent

institutional kites to defendants which contained suicidal threats and an intention to self-injure.

Plaintiff alleges that on April 20, 2011, he was given a razor to shave.   Plaintiff claims that he

attempted suicide by breaking open the razor and cutting his neck.   He then swallowed the razor.

Plaintiff was taken to the hospital.   Upon his return to the prison he was placed in observation.   On

April 22, 2011, the razor passed through plaintiff's system.   Plaintiff then took the razor and

attempted to cut himself again in the neck.   Plaintiff was immediately taken to the hospital.

Plaintiff was then placed back in an observation cell that day.   On May 2, 2011,

plaintiff was removed from the observation cell.   He began cutting himself again within two hours

of his removal.   He was then returned to an observation cell.   Plaintiff alleges that on May 9, 2011,

he was removed from the observation cell against his will. Plaintiff wrote a grievance on May 19, 2011, for denial of mental health care. Plaintiff claims that he should have been referred to a psychiatrist. Plaintiff was informed by defendants that an appropriate referral would be made if he exhibited signs or symptoms of mental illness. On June 20, 2011, plaintiff alleges that defendants Wolak and Lanala notified him that he would be referred to a psychiatrist. Plaintiff claims that he took actions that should have resulted in his return to an observation cell before he was referred to see a psychiatrist. Plaintiff saw psychiatrist Pertale who referred plaintiff to the outpatient mental health program on June 29, 2011.

Plaintiff alleges that defendants violated his Eighth and Fourteenth Amendment rights. Plaintiff requests more than $50,000.00 in compensatory and punitive damages. Defendants have moved for summary judgment.

Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Id.* at 324-25. The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). The evidence must be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true. *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (*citing Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)). However, a mere scintilla of evidence in

support of the nonmovant's position will be insufficient. *Anderson*, 477 U.S. at 251-52. Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252. *See also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); *cf. Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo County*, 390 F.3d 890, 899 (6th Cir. 2004). If, however the need involves "minor maladies or non-obvious complaints of a serious need for medical care," *Blackmore*, 390 F.3d at 898, the inmate must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment." *Napier v. Madison County*, 238 F.3d 739, 742 (6th Cir. 2001).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farmer*, 511 U.S. at 834). Deliberate indifference "entails something more than mere negligence," *Farmer,* 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* Under *Farmer*, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Estelle*, 429 U.S. at 105-06 (quotations omitted). Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Sanderfer v. Nichols*, 62 F.3d 151, 154-55 (6th Cir. 1995); *Ward v. Smith*, No. 95-6666, 1996 WL 627724, at *1 (6th Cir. Oct. 29, 1996). This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received

inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). Where, as here, "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.*; *see also Perez v. Oakland County*, 466 F.3d 416, 434 (6th Cir. 2006); *Kellerman v. Simpson*, 258 F. App'x 720, 727 (6th Cir. 2007); *McFarland v. Austin*, 196 F. App'x 410 (6th Cir. 2006); *Edmonds v. Horton*, 113 F. App'x 62, 65 (6th Cir. 2004); *Brock v. Crall*, 8 F. App'x 439, 440 (6th Cir. 2001); *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998).

Defendant Wolak states that plaintiff arrived at AMF on March 16, 2011, and was placed in "moderate risk" of suicide after he had overdosed at another institution. Defendant Wolak first saw plaintiff on April 4, 2011, for an individual therapy session. Plaintiff was not cooperative and began to masturbate. Defendant issued plaintiff a misconduct ticket. Defendant Wolak, stated that she responded to the kites that she received directly from plaintiff. Although plaintiff sent a kite on April 5, 2011, defendant Wolak did not respond to that kite and was unaware of the kite until reviewing the medical records in preparation of this case. Defendant Wolak explained that a different health care employee would have responded to plaintiff's concerns. Psychologist Kevin Francies attempted to visit plaintiff on April 13, 2011, in response to plaintiff's kites and for a 30 day check-in. Plaintiff refused the visit that day.

Prior to the incident where plaintiff swallowed the razor, defendant Wolak visited with plaintiff on April 20, 2011. Plaintiff was uncooperative with defendant's assessment and defendant believed that no additional precautions were necessary at that time. Later that day, plaintiff swallowed his razor, and after he returned from the emergency room, he was placed on observation status. Plaintiff refused to speak with defendant Wolak on April 21, 2011. At that time,

defendant Wolak recommended plaintiff's placement on moderate observation. Plaintiff would not talk with defendant Wolak on April 22, 2011. Later that day, plaintiff made superficial cuts to his neck after he defecated the razor. Plaintiff was then seen by psychological staff members other than defendant Wolak. On April 29, 2011, plaintiff was seen by defendants Wolak and Lanala and placed on intermediate risk status after staff believed that he had overdosed. Plaintiff was tested and the results were negative indicating that plaintiff had not overdosed. Defendant Wolak recommended that plaintiff should continue on intermediate risk status.

On May 2, 2011, plaintiff was smiling at his cell window, while masturbating. Plaintiff made a self-harm statement later that day. Plaintiff was placed on moderate risk status and remained in observation until his status was changed to intermediate risk on May 9, 2011. Plaintiff continued to be seen by medical and mental health care staff. On June 21, 2011, defendant Wolak referred plaintiff to Outpatient Therapy due to what she believed was an increase in self-harm statements, emotions dysregulation, and poor impulse control. The medical records show that plaintiff was seen and treated frequently by mental health care staff. A number of mental health care workers saw plaintiff during this time period, not just the defendants. Mental health care staff were very attentive to plaintiff, and his behavior leading up to his placement in Outpatient Therapy. In the opinion of the undersigned, plaintiff cannot show that defendants were deliberately indifferent to his mental health needs.

In the opinion of the undersigned, plaintiff cannot show that his Eighth Amendment rights were violated by defendants. Similarly, to the extent that plaintiff has alleged that his equal protection rights were violated by defendants due to the alleged delay he experienced in receiving mental health care, plaintiff cannot support such a claim legally and has presented no factual allegations which could justify such a claim.

Defendants alternatively move for qualified immunity. Government officials, performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999); *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997); *Noble v. Schmitt*, 87 F.3d 157, 160 (6th Cir. 1996); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). An "objective reasonableness" test is used to determine whether the official could reasonably have believed his conduct was lawful. *Dietrich*, 167 F.3d at 1012; *Anderson v. Creighton*, 483 U.S. 635, 641 (1987). "Qualified immunity balances two important interests-the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 129 S. Ct. 808, 815 (2009).

In making a qualified immunity determination the court must decide whether the facts as alleged or shown make out a constitutional violation or whether the right that was allegedly violated was a clearly established right at the time of the alleged misconduct. *Id.* at 816. If the court can conclude that either no constitutional violation occurred or that the right was not clearly established, qualified immunity is warranted. The court may consider either approach without regard to sequence. *Id*. As previously discussed, because plaintiff has not established that his constitutional rights were violated, defendants are entitled to qualified immunity.

To the extent that plaintiff is claiming his state law rights were violated, it is recommended that this court refuse to exercise pendent jurisdiction over such claims. Claims raising issues of state law are best left to determination by the state courts, particularly in the area of prison administration. In addition, pendent jurisdiction over state law claims cannot be exercised after all

federal claims have been dismissed. *United Mine Workers v. Gibbs*, 383 U.S. 715, 726-727 (1966); *Smith v. Freland*, 954 F.2d 343, 348 (6th Cir.), *cert. denied*, 504 U.S. 915 (1992).

In summary, in the opinion of the undersigned, Plaintiff has failed to sustain his burden of proof in response to Defendants' Motion for Summary Judgment. Accordingly, it is recommended that Defendants' Motion for Summary Judgment (Docket #76) be granted and that this case be dismissed in its entirety.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985).

 /s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE

Dated: January 16, 2014